Peyton, Appellant, *v.* Equitable Life Assurance Society.

Argued April 22, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Samuel J. Goldstein,* for appellant.

*Thomas Lewis Jones,* for appellee.

OPINION BY RHODES, J., July 19, 1946:

The issue presented for determination on this appeal is a narrow one, and involves the construction of a group life insurance policy.

An action of assumpsit was instituted by plaintiff as named beneficiary against defendant to recover the amount for which plaintiff's decedent's life was insured under a group policy issued by defendant to the United States Steel Corporation, and by an individual certificate issued to John Peyton, plaintiff's decedent, under the terms and conditions of the group policy.

A jury rendered a verdict for plaintiff in the amount of the insurance with interest. Defendant filed a motion for judgment n. o. v. and a motion for a new trial. The motion for judgment n. o. v. was granted, and judgment was entered in favor of defendant. Consequently, the motion for new trial was refused. The court below, however, went on to say: "However, if we had not sustained the motion for judgment non obstante veredicto, we would have had to grant the motion for new trial for the reason that plaintiff's evidence failed to establish total and permanent disability within the meaning of those terms as used in the policy." Plaintiff has appealed.

The question for decision is whether the insurance coverage on the life of John Peyton automatically ceased on September 30, 1943, for nonpayment of his required contribution to the insurance fund. Appellant's position is that the insurance coverage extended to October 31, 1943, conceding that deceased did not make his

monthly contribution for October, 1943. Defendant contends that the insurance coverage ceased and terminated on the last day covered by the previous monthly contribution, to wit, September 30, 1943. Under the special provisions of the policy it is provided that where an employee's insurance has ceased in accordance with the provisions of the policy, and such employee's death occurs within a period after said date not longer than the time such employee's insurance had been continuously in force, and in any event not longer than twelve months after said date, providing the said employee was totally disabled at the date of cessation of the insurance coverage, and that such total disability continued from said date to said employee's death, the amount for which such employee's life was insured shall then be payable to the beneficiary.

Peyton's insurance began on July 9, 1943. If it terminated on September 30, 1943, it was in force a total of 84 days. Beginning October 1, 1943, and ending January 29, 1944, the date of his death, is a total of 121 days. If the insurance on the life of Peyton ceased and terminated on September 30, 1943, appellant could not avail herself of the special provisions of the policy, and the judgment in favor of defendant should be affirmed.

John Peyton was employed by the Carnegie-Illinois Steel Corporation on July 9, 1943, and so continued until August 13, 1943. The Carnegie-Illinois Steel Corporation is a subsidiary of United States Steel Corporation. At the time of his employment, upon application, he became insured under a policy of group life insurance issued by defendant to the United States Steel Corporation. His final contribution for insurance which covered September, 1943, was deducted from his pay ending August 14, 1943. No payment or tender of payment was ever made for October. Peyton did not return to work for the Carnegie-Illinois Steel Corporation after August 13, 1943; but between August 13, 1943, and August 28, 1943, he worked for another corporation.

At the trial, the trial judge ruled as a matter of law that the insurance was in force until October 31, 1943, under the terms and provisions of the policy, and submitted the case to the jury to determine whether Peyton was totally disabled on or before October 31, 1943, and if so whether said total disability continued until his death.

The court below, in granting defendant's motion for judgment n. o. v., concluded that Peyton's failure to pay the premium for October, 1943, caused automatic cessation of the insurance coverage, and that there could be no recovery under the policy.

The group policy became effective on the first day of July, 1935, and premiums were payable monthly by the employer at defendant's home office on or before the due date. It provided generally that the amount for which an employee's life was insured thereunder was payable to the person or persons entitled thereto under the provisions of the policy upon receipt of due proof of the death of the employee occurring while insured under the policy, and while the policy was in force. Employees were to contribute not more than 75 cents per month per thousand of group life insurance on such employees.

At the time of Peyton's employment, special provision No. 6 of the policy was in effect. This provision reads in part as follows:

"6. Terminations. The insurance under this policy upon the life of any employee shall automatically cease upon discontinuance of his required contribution toward the payment of premiums for the insurance hereunder, or in the event of termination of his regular employment at his customary place of employment with the Employer in the classes of employees insured hereunder, without regard to the cause of such termination, the insurance shall automatically cease upon the thirty-first day following the termination of his employment. . . ."

The individual certificate issued to Peyton, subject to the terms and conditions of the group policy, contains

the pertinent provisions of the group policy, and reads in part as follows:

"Termination and Conversion: The insurance upon the life of any Employee shall automatically cease upon discontinuance of his required contributions toward the payment of premiums for the insurance under the policy, or in the case of the termination of his employment with the Employer in the specified classes of Employees, the insurance shall automatically cease upon the thirty-first day following the date on which such termination takes place; . . . ."

Appellant in her argument concedes the failure of Peyton to make his contribution for October, 1943, but contends that he was entitled to a thirty-one day grace period during which time his insurance coverage remained in full force and effect. In support of her contention she cites and relies upon *Ozanich v. Metropolitan Life Insurance Co.*, 119 Pa. Superior Ct. 52, 180 A. 67; *Jones v. Metropolitan Life Insurance Co.*, 156 Pa. Superior Ct. 156, 39 A. 2d 721; *Woolford v. Equitable Life Assur. Soc. of United States*, 149 Pa. Superior Ct. 225, 27 A. 2d 411. We are of the opinion that these cases are not controlling. In the *Ozanich* case, 119 Pa. Superior Ct. 52, 180 A. 67, the only question at issue was whether Ozanich's death occurred while he was in the employ of the Pressed Steel Car Company, and we held that there was ample evidence to support a finding by the jury that he was so employed within the meaning of the policy on the day of his death. The policy there provided for payment to the beneficiary "if death occurs while the employee is in the employ of the employer and while said group policy is in force." The nonpayment of premium contribution by the employee was not involved. In the *Jones* case, 156 Pa. Superior Ct. 156, 39 A. 2d 721, the insurance was to be payable "if death occur while the employee is in the employ of the employer, or within thirty-one (31) days after termination of employment and while the group policy is in force."

We there held that the policy continued in force without the payment of premiums by the employee, until the termination of the employment. In the *Woolford* case, 149 Pa. Superior Ct. 225, 27 A. 2d 411, the issue was whether the insured was totally disabled within the terms of the policy. *Grove v. Equitable Life Assur. Soc. of United States,* 336 Pa. 519, 9 A. 2d 723, and *Poch v. Equitable Life Assur. Soc. of United States,* 343 Pa. 119, 22 A. 2d 590, to which reference is made by appellant, are not in point. The *Grove* case involved the question of employment, and the *Poch* case involved a cancellation or modification of the group policy without notice to the employee.

In the present case employment was not the sole requirement for insurance coverage; and continuance of the insurance was not co-extensive with employment. There could be employment without insurance coverage. Those cases involving dissimilar policies and different issues are of little value in this type of litigation. The determining factor here is the policy provision requiring payment by an employee of a monthly contribution in advance as a condition precedent to insurance coverage. By the clear terms of the group policy and the individual certificate, failure of an employee to make such payment caused an automatic cessation of insurance coverage. *Nelson v. Aetna Life Insurance Co.,* 115 Pa. Superior Ct. 15, 17, 18, 174 A. 624; *Rhodes v. Royal Union Mutual Life Insurance Co.,* 56 Pa. Superior Ct. 233. On August 14, 1943, Peyton paid the premium for September. There was no payment of the premium by Peyton required for the continuance of the insurance beyond September 30, 1943.

There is no merit in appellant's argument that other provisions in the policy extended the insurance on the life of Peyton until October 31, 1943. The provision relative to extended coverage for thirty-one days upon termination of employment could only apply where the nonpayment of premium clause which precedes it in the

policy does not apply, and where there has been a termination of employment. The nonpayment of premium clause is separate and distinct from the provision which follows.

The group policy and the certificate contained a conversion privilege.[1] Clearly the mere privilege of conversion within thirty-one days after the termination of employment while the employee is insured under the policy does not here extend the coverage. This privilege which Peyton did not attempt to exercise before his death on January 29, 1944, did not constitute a contract to continue the former insurance where there had been a termination of the insurance on September 30, 1943, as the result of nonpayment of the insurance contribution by the employee. See *Missouri State Life Insurance Co. v. Hinkle,* 74 S. W. 2d 1082.

The group policy also contains a clause providing for a period of grace for payment of premiums. "A grace of thirty-one days will be granted to the employer for the payment of every premium after the first, during which period the insurance hereunder shall continue in force provided the premium is paid by the employer before the expiration of such period." The individual certificate to Peyton did not specify any period of grace, but it and the group policy set forth that the insurance would automatically cease upon discontinuance of required contributions by him toward the payment of

---

[1] "4. Certificates and Conversions. The society will issue to the Employer for delivery to each employee whose life is insured under this policy, an individual certificate setting forth a statement as to the insurance protection to which such employee is entitled under the terms hereof, and to whom it is payable, together with a provision to the effect that in case of the termination of the employment for any reason whatsoever while insured hereunder, the employee shall be entitled to have issued to him by the Society . . . upon application made to the Society within thirty-one days after such termination . . . an individual policy of life insurance . . ."

See Act of May 17, 1921, P. L. 682; Act of April 26, 1929, P. L. 785, § 1; Act of May 16, 1939, P. L. 144, § 3, 40 PS § 532.

premium for the insurance under the group policy. In group life insurance policies the insurer and the employer are the primary contracting parties, and the insured employee, or his beneficiary, has no greater rights than are provided in the policy. *Miller v. Travelers Insurance Co.*, 143 Pa. Superior Ct. 270, 273, 17 A. 2d 907; *Ercole v. Metropolitan Life Insurance Co.*, 155 Pa. Superior Ct. 549, 552, 39 A. 2d 293; *Poch v. Equitable Life Assur. Soc. of United States*, supra, 343 Pa. 119, 125, 22 A. 2d 590. The grace period granted to the employer to pay premiums did not continue the insurance coverage for Peyton, where the insurance had ceased under the policy because of his nonpayment of premium contributions to the employer. See *Aetna Life Insurance Co. v. Carroll*, 65 S. W. 2d 25.

We agree with the conclusion of the court below that the insurance coverage on Peyton's life ceased automatically on September 30, 1943, for nonpayment of premium, and that it was not revived or extended by any other clause in the group policy.

Judgment for defendant is affirmed.