In re Hazel Lee Martin WORL, Debtor.

**Paul D. GILBERT, Trustee in Bankruptcy, Plaintiff,**

v.

**NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Bankruptcy No. 3–87–01075.**
**Adv. No. 3–88–0143.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 8, 1990.

Paul D. Gilbert, Dayton, Ohio, for plaintiff.

Mark R. Chilson and Barbara A. Lahmann, Young & Alexander, L.P.A., Dayton, Ohio, for defendant.

DECISION GRANTING SUMMARY JUDGMENT MOTION OF NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY

WILLIAM A. CLARK, Bankruptcy Judge.

This action is brought by the trustee in bankruptcy for the bankruptcy estate of Hazel Lee Martin Worl to recover the face amounts of certain insurance policies issued by the defendant, New England Mutual Life Insurance Company. The policies name William A. Martin (the deceased spouse of the debtor) as the insured and Hazel Martin as the beneficiary. The answer of the defendant asserts that the life insurance policies covering the life of the debtor's deceased spouse were not in effect upon the death of William A. Martin for the reason that the policies had previously lapsed upon the nonpayment of premiums. Defendant further states that the decedent's disability did not excuse payment of the life insurance premiums because the decedent did not provide the defendant with proof of continuing disability as required by the policies.

Before the court is a motion of New England Mutual Life Insurance Company for summary judgment pursuant to Bankr.R. 7056 and Fed.R.Civ.P. 56. The court has jurisdiction by virtue of 28 U.S.C. § 1334 and the referral to this court by the standing order of reference in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

## UNDISPUTED FACTS

From an examination of the pleadings, answers to interrogatories, affidavits and exhibits contained in the court file, the court finds the following facts to be undisputed by the parties:

1) On July 1, 1973 Defendant issued a life insurance policy (# 5,272,746) to William A. Martin in the amount of $10,000 (Defendant's Exhibit B);

2) On July 1, 1974 Defendant issued a life insurance policy (# 5,346,616) to William A. Martin in the amount of $10,000 (Defendant's Exhibit B and B–1);

3) On July 1, 1975 Defendant issued a life insurance policy (# 5,465,067) to William A. Martin in the amount of $5,000 (Defendant's Exhibit B and B–2);

4) Hazel Lee Martin, the debtor and spouse of William A. Martin, was the primary beneficiary of each insurance policy;

5) Each of the insurance policies was subject to a "Supplemental Agreement for Waiver of Premiums During Total Disability," whereby the defendant agreed "to waive payment of premiums falling due on the policy and on all its supplemental agreements after the commencement and during the continuance of disability upon receipt of due proof that such disability is total as defined in this agreement and subject to the terms and conditions herein." (Defendant's Exhibits B–1 and B–2);

6) In March of 1977 a statement of disability was submitted to Defendant by M.E. Hamilton, M.D. on behalf of William A. Martin. The physician stated that Mr. Martin had angina pectoris and had ceased work because of total disability in December of 1975. With respect to when Mr. Martin could be expected to return to work, Dr. Hamilton checked a box marked "indefinite" rather than indicating a precise date or checking a box marked "never." (Attachment to Defendant's Memorandum, Doc. No. 15);

7) Defendant waived the insurance premium payments in 1976 and 1977 (affidavit of Elizabeth Daly);

8) The "Supplemental Agreement for Waiver of Premiums During Total Disability" contains the following provision:

"The Company shall have the right, not oftener than once a year, to require satisfactory proof of continuing total disability. If such proof is not furnished or if at any time it appears that the Insured is no longer totally disabled, no further premium shall be waived." (Defendant's Exhibits B–1 and B–2);

9) Between May 1978 and September 15, 1978 six letters were sent to Mr. Martin by the defendant requesting Mr. Martin and his physician to complete forms as proof of continuing disability so that the premiums could continue to be waived (letters attached to affidavit of Judy Shan);

10) Defendant did not receive proof of continuous disability from Mr. Martin in 1978. Beginning on July 1, 1978, no further premium payments were waived by Defendant and Mr. Martin never made any subsequent premium payments (affidavit of Elizabeth Daly);

11) Each insurance policy also contained an "automatic premium loan" provision whereby unpaid premiums would be advanced as a loan against the policy not to exceed the cash value of the policy (Defendant's Exhibits B–1 and B–2, p. 5);

12) Mr. Martin had elected to be covered by the automatic premium loan provision (Defendant's Exhibit B–1, p. 6.6; Exhibit B–2 p. 6.7);

13) In accordance with the automatic premium loan provision, Defendant, as of July 1, 1978, began paying the insurance premiums and charged the premiums as loans against Mr. Martin's policies (affidavit of Elizabeth Daly);

14) Eventually, the payment of premiums by Defendant resulted in loans that equalled the cash surrender value of each policy, so that no further payments were paid by the defendant as loans. This resulted in the defendant considering each policy as lapsed for the non-payment of premiums on the following dates:

Policy # 5,465,067—lapsed September 11, 1981

Policy # 5,346,616—lapsed January 1, 1983

Policy # 5,272,746—lapsed December 10, 1982

(affidavit of Elizabeth Daly);

15) As each policy lapsed, Defendant sent notices to Mr. Martin (affidavit of Elizabeth Daly);

16) Mr. Martin died on January 18, 1985 survived by the debtor.

## SUMMARY JUDGMENT

In 1986 the Supreme Court issued three significant opinions with respect to the practice of summary judgment: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Scholars and courts are in agreement that a 'new era' in summary judgments dawned by virtue of the Court's opinions in these cases." *Street v. J.C. Bradford and Co.*, 886 F.2d 1472, 1476 (6th Cir.1989).

On the whole, these decisions reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact had tended to emasculate summary judgment as an effective procedural device. *Id.*

Federal Rule of Civil Procedure 56(c) reads, in part, as follows:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In the Supreme Court's view,

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an

essential element of her case with respect to which she has the burden of proof. *Celotex, supra,* 477 U.S. at 322–323, 106 S.Ct. at 2552–2553.

Upon filing a motion for summary judgment, the movant always bears the initial burden of informing the trial court of the basis for its motion. The movant must also identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the movant believes demonstrate the absence of a genuine issue of material fact. (There is, however, no requirement that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.) Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file. However, the nonmoving party is required to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.*

■ In short, a movant may challenge the opposing party to "put up or shut up" on a critical issue, and if, after being afforded a sufficient time for discovery, the respondent does not "put up," summary judgment is proper. *Street, supra,* 886 F.2d at 1478.

The standard for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Liberty Lobby, supra,* 477 U.S. at 250, 106 S.Ct. at 2511.

Recently this court's circuit court of appeals reviewed court decisions and commentary regarding the effect of the three Supreme Court decisions, *supra,* and concluded that these three decisions establish at least the following principles for "new era" summary judgment practice:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e. the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that

there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street, supra,* 886 F.2d at 1479–1480 (footnotes omitted).

## CONCLUSIONS OF LAW

■ A review of the undisputed facts, *supra,* which are primarily established by Defendant's affidavits and exhibits, leads to the conclusion that Defendant originally waived the payments of life insurance premiums by Mr. Martin, but subsequently ceased waiving such payments because it did not receive proof of Mr. Martin's continuing disability as required by a "Supplemental Agreement for Waiver of Premiums During Total Disability." That agreement contains the following provision:

The Company shall have the right, not oftener than once a year, to require satisfactory proof of continuing total disability. If such proof is not furnished or if at any time it appears that the Insured is no longer totally disabled, no further premium shall be waived.

Despite at least six requests by the defendant for Mr. Martin to furnish proof of continuing total disability, the defendant did not receive such proof and, therefore, terminated the waiver of premiums as permitted by the Supplemental Agreement.

Notwithstanding the termination of waiver of premiums, the life insurance contracts remained in effect as a result of Mr. Martin previously selecting to be covered by an "automatic premium loan" provision. In accordance with that provision, Defendant advanced the premium payments as a loan against the cash surrender value of the policies. Once the value of the premium loans equaled the cash surrender values of the respective policies, no further payments were advanced because Mr. Martin never submitted any further premium payments and the policies expired as provided in each life insurance policy:

In case of failure to pay any premium when due or during the period of grace, this Policy shall cease to be in force, except as provided by the Non–Forfeiture Provisions, unless the premium due is paid by accumulated dividends or under the terms of an effective automatic premium loan provision.

Mr. Martin was sent notice by Defendant as the policies lapsed. Plaintiff has cited no legal authority to the court indicating that any of Defendant's actions were either invalid or improper under Ohio law. "In the absence of legislation the rights of the parties on cancellation of an insurance policy pursuant to its terms are as fixed by the contract as set forth in the policy." *Gibbons v. Kelly,* 156 Ohio St. 163, 101 N.E.2d 497 (1951).

Here, the defendant, as movant for summary judgment, must meet the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case and it may meet that burden by pointing out to the court that the non-movant, having had a sufficient time for discovery, has no evidence to support an essential element of his case. *Street, supra,* 886 F.2d at 1479. Defendant has asserted that the suit has been filed for over a year and that Plaintiff has put forward no evidence that Mr. Martin was continuously disabled. Therefore, Defendant has carried its initial burden, and Plaintiff must present affirmative evidence in order to defeat Defendant's properly supported motion for summary judgment.

The Plaintiff-trustee objects to Defendant's motion for summary judgment on the ground that the only issue in this case is whether Mr. Martin was disabled from the time Defendant originally waived the payment of insurance premiums until his death, and that Defendant is raising a new issue of failure to furnish proof of continuing disability in its motion for summary judgment. Plaintiff's position is bewildering and insupportable in view of the fact that the issues addressed in Defendant's motion for summary judgment were prominently set forth in its answer to Plaintiff's complaint:

*Second Defense*

7. Each of the policies of insurance under which Plaintiff seeks to recover lapsed for non-payment of premium prior to the death of William A. Martin.

*Third Defense*

8. Premium payments were not excused because of decedent's disability as Defendant was not provided with proof of continued disability as required by the policies.

Plaintiff's basic contentions in this case are that Mr. Martin was continuously disabled during all relevant time periods and that by virtue of a letter sent to the debtor by an agent of Defendant the requirement of proof of continued disability was waived by Defendant. On both of these issues Plaintiff would have the burden of proof at trial.

In this case it is clear that the policies lapsed and remained lapsed unless the provisions for forfeiture were subsequently waived by Defendant. "[F]orfeiture is not favored in the law, and a waiver will be inferred whenever it can reasonably be inferred from the facts." *Miraldi v. Life Insurance Co. of Virginia,* 48 Ohio App.2d 278, 356 N.E.2d 1234, 1236 (1971). However, in the instant matter, the issue of whether the defendant waived the requirement of proof of continuous disability is not relevant unless it is first shown that Mr. Martin was in fact disabled during the relevant periods herein. The initial question, therefore, is whether the plaintiff has any evidence to support this essential element of his case.[1] The following items bearing on the issue of Mr. Martin's disability are currently contained in the case file:

1) A document sent to the Rehabilitation Services Commission for the State of Ohio by M.E. Hamilton, M.D. It contains the following diagnosis:

ASHD, angina pectoris, diabetes, hyperlipidemia, hypothyroidism, cirrhosis, extreme exogenous obesity....

The document is dated May 12, 1976.

2) A "Disability Determination and Transmittal" document from the Department of Health, Education and Welfare which concludes that Mr. Martin has been under a disability since December 1, 1975 and contains the following diagnosis:

Arteriosclerotic heart disease; infarction of the myocardium; diabetes mellitus with hypothyroidism; hyperlipidemia; cirrhosis, type not specified; obesity due to an excess of food.

The transmittal is dated May 14, 1976.

3) A "Disability Attending Physician's Statement" signed by M.E. Hamilton, M.D. containing the diagnosis of ASHD Angina Pectoris. The statement is dated March 4, 1977.

The obvious problem with respect to Plaintiff's evidentiary material and his burden of proof is that all of these documents relate to the years 1975–1977. But the defendant does not dispute that Mr. Martin was disabled at that time; indeed, it waived the premium payments for a period of time for that very reason. There is absolutely nothing in the record to indicate the medical status of Mr. Martin from 1977 until the date of his death in 1985. Although, given the nature of Mr. Martin's disability, it is quite possible that Mr. Martin's condition never improved, the court is unwilling to make such an inference, particularly when the plaintiff has furnished the court with nothing to even slightly support such an inference.

To preclude the granting of summary judgment to Defendant, Plaintiff must come forward with specific facts showing that there is a genuine issue for trial.

Clearly, mere allegations of a cause of action may no longer suffice to get a plaintiff's case to the jury. When con-

---

1. Even if Plaintiff could successfully demonstrate that Mr. Martin was in fact continuously disabled, Plaintiff has furnished no legal authority for the proposition that disability *per se* would permit him to recover under the policies. In this court's opinion, Plaintiff would still have to establish a legal excuse for Mr. Martin's failure to furnish proof of continuing disability, a waiver by Defendant of this contractual requirement, or furnish sufficient evidence to enable the court to provide equitable relief.

fronted with a properly supported motion for summary judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact. *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989). The court finds that the plaintiff has not come forward with the concrete evidence necessary to establish the existence of a genuine issue of fact.

Plaintiff's complaint was filed on June 6, 1988. Since that time there have been three extensions of the court's original discovery cut-off date. While the court agrees with Plaintiff's assertion that the continuing disability of Mr. Martin is a difficult matter to prove (Doc. 17), at some point the Plaintiff must demonstrate that he has sufficient evidence to go to trial. That time is now. The plaintiff has had adequate time for discovery and has failed to make a showing sufficient to establish the existence of an element essential to his case. The court finds that the record, taken as a whole, reveals but one reasonable conclusion: the life insurance policies issued to Mr. Martin were no longer in effect at the time of his death.

Therefore, summary judgment will be entered against the plaintiff and in favor of the defendant in accordance with Rule 56.